# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

UNITED STATES OF AMERICA,
ex rel. REID LAWSON,

     Plaintiffs,

     vs.

AEGIS THERAPIES, INC.; BEVERLY
ENTERPRISES, INC.; BEVERLY
HEALTH AND REHABILITATION
SERVICES, INC.; BEVERLY
ENTERPRISES GEORGIA, INC.;
BEVERLY HEALTH & REHAB CENTER-
JESUP (d/b/a/ GOLDEN LIVING
CENTER-JESUP); GOLDEN GATE
NATIONAL SENIOR CARE HOLDINGS,
LLC; and GOLDEN GATE ANCILLARY,
LLC,

     Defendants.

CV 210-72

## ORDER

     Presently before the Court is Defendants' Motion to Dismiss, which is brought pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Upon due consideration, Defendants' motion is **GRANTED** in part and **DENIED** in part.

1

## I. Factual Background

This action is predicated upon Defendants' alleged submission of false claims for reimbursement under Medicare, in violation of the False Claims Act ("FCA"). See Dkt. No. 28. The following factual summary is taken from Plaintiffs' Amended Complaint. See id.

Defendants Beverly Enterprises, Inc., Beverly Health and Rehabilitation Services, Inc., and Beverly Enterprises Georgia, Inc. (collectively, "Beverly Companies") are headquartered in Fort Smith, Arkansas and own and operate a nationwide network of nursing facilities. Id. ¶ 6. One facility, Defendant Beverly Health & Rehab Center—Jesup ("the Facility"), is located in Jesup, Georgia. Id. The Facility does business as "Golden Living Center-Jesup." Id. Defendants Golden Gate National Senior Care Holdings, LLC and its affiliate, Golden Gate Ancillary, LLC (collectively, "Golden Gate Companies"), also headquartered in Fort Smith, Arkansas, are part of the self-described "Golden Living family of companies" that are ultimately owned by Fillmore Strategic Investors, LLC and Fillmore Capital Partners, LLC. Id. ¶ 7. Another member of the Golden Living family is Defendant Aegis Therapies, Inc. ("Aegis" or "the Contractor"), which is headquartered in Plano, Texas. Id. ¶ 8. Aegis is one of the largest contract rehabilitation

AO 72A
(Rev. 8/82)

therapy companies in the United States.  Id.  In 2009, the

Contractor hired Relator Reid Lawson as a physical therapist.

Id. ¶ 9.  Relator provided physical therapy services for the

Facility, where Aegis had been contracted.  Id.  During his time

with Aegis, Relator observed various practices that he believed

to be medically unnecessary and meant to perpetrate a fraudulent

scheme to falsely bill for services.  See Dkt. No. 3 ¶¶ 4, 8-17.

For example, on May 6, 2010, the Contractor trained its

employees and therapists about the importance of medical record

documentation.  Dkt. No. 28 ¶ 41.  The Contractor described

medical record documentation as "more of an art than a science"

and held therapists responsible for selling to the therapists'

reviewers that a patient's condition requires a therapist for

improvement.  Id.  Therapists were told that more therapy

services could be provided if a patient looks more complex.  Id.

¶ 45.  According to the Contractor's training, reimbursement is

the documentation's "ultimate goal."  Id. ¶ 41.  As a result,

and to meet aggressive and unrealistic Ultra High[1] and average

length of stay targets, therapists regularly recorded and

---

[1] Ultra High refers to a resource utilization group level for rehabilitation
to which patients are assigned, which affects the daily rate paid to a
nursing facility under Medicare.  Dkt. No. 28 ¶¶ 22-25.  The Ultra High level
is "intended to apply only to the most complex cases requiring rehabilitative
therapy well above the average amount of service time."  Id. ¶ 26 (quoting
Medicare Program; Prospective Payment System and Consolidated Billing for
Skilled Nursing Facilities, 63 Fed. Reg. 26,252, 26,258 (May 12, 1998)).

AO 72A
(Rev. 8/82)

provided services that were medically unreasonable, unnecessary, and unskilled. Id. ¶¶ 40, 42.

Therapy was "excessive in frequency, duration, or intensity for patients who could not be reasonably expected to benefit from skilled therapy and/or who showed no significant progress from the therapy." Id. ¶ 43. When the Contractor's therapists would meet with nursing staff to develop a patient plan of care, it was assumed that patients should be subjected to skilled services for the full period of covered benefits—regardless of the patient's condition, goals, or progress. Id. ¶ 44. In regard to several types of therapy—including speech-language pathology, group therapy, and Patterned Electrical Neuromuscular Stimulation ("PENS")—the Contractor's and Facility's treatment of patients was unnecessary. See id. ¶¶ 43-66.

Claims submitted from therapy services were false because the minutes listed included therapy that was "medically unreasonable, unnecessary, and/or unskilled." Id. ¶¶ 67-68. As further alleged in the Complaint, in light of Defendants' corporate compliance manuals and notices from the Department of Health and Human Services, Defendants knew that they were billing for medically unreasonable, unnecessary, and unskilled services. Id. ¶¶ 69-75.

AO 72A
(Rev. 8/82)

## II. Procedural Background

On April 29, 2010, Relator Reid Lawson filed a qui tam complaint against Defendant Aegis Therapies, Inc. Dkt. No. 3. Relator asserted that Aegis submitted false claims for physical therapy services under 31 U.S.C. § 3729 (Count 1); false claims for services under O.C.G.A. § 49-4-168.2 (Count 2); and claims as part of a conspiracy under 31 U.S.C. § 3729(a)(2) and O.C.G.A. § 49-4-168.1 (Count 3). Id. ¶¶ 18-33. On January 2, 2013, the United States of America ("the Government") elected to intervene in Count 1 and declined to intervene in Counts 2 and 3. See Dkt. No. 26. On March 11, 2013, the Government filed an amendment complaint ("the Complaint"). Dkt. No. 28. The Complaint added six defendants to the action:

- Beverly Enterprises, Inc.;

- Beverly Health and Rehabilitation Services, Inc.;

- Beverly Enterprises Georgia, Inc.;

- Beverly Health & Rehab Center-Jesup (d/b/a/ Golden Living Center-Jesup);

- Golden Gate National Senior Care Holdings, LLC; and

- Golden Gate Ancillary, LLC.

See id. The Complaint included four claims against each defendant: false or fraudulent claims under 31 U.S.C. § 3729(a)(1)(A); false statements under 31 U.S.C.

AO 72A
(Rev. 8/82)

§ 3729(a)(1)(B); unjust enrichment; and payment by mistake.  Id.
¶¶ 76-85.  On May 10, 2013, Defendants filed a motion to dismiss
the Government's Complaint under Federal Rules of Civil
Procedure ("Rules") 9(b) and 12(b)(6).  Dkt. Nos. 38-39.

## III. Discussion

### A. Rule 9(b) Motion to Dismiss

#### 1. Parties' Arguments

Defendants seek to dismiss all claims against Beverly
Companies and Golden Gate Companies (collectively, "Corporate
Defendants") for failing to satisfy Rule 9(b).  Dkt. No. 53, at
3.  Defendants argue that the Complaint does not comport with
Rule 9(b) because the Government fails "to identify a single
'time, place and substance' of any alleged fraud, but only
generally avers that these companies either own and operate
skilled nursing facilities ('SNFs') or are related to other
separate companies that own and operate [SNFs]."  Dkt. No. 38,
at 2.  The Government appears to agree that it has not
sufficiently alleged facts against Corporate Defendants "with
particularity" to trigger direct liability for the submission of
false claims; instead, the Government asserts that Defendants
are liable under a veil-piercing or alter-ego theory.  Dkt. No.
48, at 7-8.  The Government asks the Court to decline ruling on

AO 72A
(Rev. 8/82)

Defendants' Rule 9(b) motion so that discovery can allow the Government to develop relevant facts or, in the alternative, dismiss Corporate Defendants without prejudice and allow the Government to amend the Complaint once sufficient facts are developed to allege a veil-piercing theory. Id. at 9.

### 2. Legal Standard

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The heightened pleading standard of Rule 9(b) applies to causes of action brought under the FCA. Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009).

Courts must apply Rule 9(b)'s heightened standard in light of the purposes it serves. A complaint alleging fraud must provide the defendant with "enough information to formulate a defense to the charges." United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1313 n.24 (11th Cir. 2002). It must contain specifically pleaded allegations on essential elements, rather than mere conjecture. Id. at 1313. "The complaint must satisfy Rule 9(b) with respect to each defendant, and some allegation as to each defendant's role in the fraud is part of this requirement." United States v. Gericare Med.

AO 72A
(Rev. 8/82)

Supply Inc., No. CIV.A.99-0366-CB-L, 2000 WL 33156443, at *9 (S.D. Ala. Dec. 11, 2000) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1381 (11th Cir. 1997) (per curiam)). The Eleventh Circuit has emphasized that "[t]he application of Rule 9(b), however, 'must not abrogate the concept of notice pleading.'" Tello v. Dean Witter Reynolds, Inc., 494 F.3d 956, 972 (11th Cir. 2007) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)); see also Friedlander v. Nims, 755 F.2d 810, 813 n.3 (11th Cir. 1985). Rule 9(b)'s standard should not be conflated with that used on a summary judgment motion; rather, to satisfy Rule 9(b), "a plaintiff is not expected to actually prove his allegations." United States ex rel. Longest v. Dyncorp, No. 603CV816ORL31JGG, 2006 WL 47791, at *5 (M.D. Fla. Jan. 9, 2006) (quoting Clausen, 290 F.3d at 1313).

As applied to an FCA cause of action, Rule 9(b) requires a plaintiff not only to provide the "who, what, where, when, and how of improper practices," but also the "who, what, where, when, and how of fraudulent submissions to the government." Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) (per curiam) (internal quotation marks omitted). Rule 9(b) serves to ensure that an FCA cause of action has "some indicia of reliability . . . to support the allegation of an actual false claim for payment being made to the Government." Clausen,

290 F.3d at 1311. Also, although Rule 9(b) by its terms applies to claims for payment by mistake, "its applicability to claims of unjust enrichment is less clear." Gericare Med. Supply Inc., 2000 WL 33156443, at *10. "It appears to be the rule that a claim for unjust enrichment is subject to Rule 9(b) only if it is 'premised on fraud.'" Id. (quoting Daly v. Castro Llanes, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998)). Here, because allegations of fraud underlie the unjust enrichment claim, the Court will apply the heightened pleading standard of Rule 9(b). United States v. Henderson, No. CIV.03-5060(MJD/JDL), 2004 WL 540278, at *2 (D. Minn. Mar. 16, 2004).

### 3. Application

The Government has failed to plead facts with particularity against Beverly Companies and Golden Gate Companies and thus has not satisfied Rule 9(b)'s mandate. Specifically, there are no allegations about how, when, and where Corporate Defendants were involved in the alleged fraudulent activity, who at the companies was involved, and what statements were made. Indeed, the only allegations of misconduct concern the Contractor and the Facility. See Dkt. No. 28. The Government does not come near meeting Rule 9(b)'s threshold for specificity. See Hopper, 588 F.3d at 1330 (affirming dismissal for failing to allege that the government relied on false claims); United States ex rel.

AO 72A
(Rev. 8/82)

Atkins v. McInteer, 470 F.3d 1350, 1359 (11th Cir. 2006) (affirming dismissal because the plaintiff failed to show that defendants actually submitted reimbursement claims).

Instead of supporting any theory of direct liability against Corporate Defendants, the Government argues in its response to Defendants' motion to dismiss that Corporate Defendants may be liable under a veil-piercing or alter-ego theory of liability. Dkt. No. 48, at 7-9. "Because relator's claims are brought under the False Claims Act and relate to the federal Medicare program, 'federal law, therefore, controls the veil-piercing question.'" United States ex rel. Hockett v. Columbia/HCA Healthcare Corp., 498 F. Supp. 2d 25, 60 (D.D.C. 2007) (quoting United States ex rel. Kneepkins v. Gambro Healthcare, Inc., 115 F. Supp. 2d 35, 39 (D. Mass. 2000)); see also United States ex rel. Dekort v. Integrated Coast Guard Sys., 705 F. Supp. 2d 519, 546 (N.D. Tex. 2010) ("Although not yet addressed by the Fifth Circuit, other circuits have held that federal common law (rather than the law of the state where a corporation is incorporated), governs the veil-piercing question in a FCA case."). Only in unusual circumstances will courts "disregard the separate identities of a parent and its subsidiary, even a wholly-owned subsidiary." Hockett, 498 F. Supp. 2d at 60 (quoting Sec. Indus. Ass'n v. Fed. Home Loan Bank Bd., 588 F. Supp. 749, 754 (D.D.C. 1984)). The Government's

AO 72A
(Rev. 8/82)

complaint must allege facts suggesting (1) that there is a unit of interest and ownership among Defendants that makes their separate personalities no longer exist and (2) that an inequitable result would flow from treating Defendants separately. See Hockett, 498 F. Supp. 2d at 60 (granting summary judgment for defendants because of the relator's failure to provide any affirmative evidence that corporate formalities were not maintained). In the context of an action brought under the FCA, the complaint must include allegations that Defendants abused their corporate forms to insulate themselves from FCA violations committed by subsidiaries. See United States v. Universal Health Servs., Inc., No. 1:07CV00054, 2010 WL 4323082, at *4 (W.D. Va. Oct. 31, 2010) (dismissing a veil-piercing action for failing to meet Rules 8's and 9(b)'s requirements).

Because the Government fails to assert facts sufficient to show plausible liability under the FCA based on Corporate Defendants' abuse of their corporate forms, the Complaint is insufficiently pleaded. The Government alleged no facts showing that Defendants' separate personalities exist under a common unit of ownership, and there are no facts showing why an inequitable result would flow from treating them as distinct. Likewise, the Government has failed to allege facts creating a plausible conclusion that Defendants' forms were used to violate the FCA. Instead, the Government only describes Corporate

11

Defendants' headquarters, industry, and relationship with each other at a high level of generality. The alleged relationships among Defendants—which are by no means clearly articulated in the Complaint—fall far short of showing a plausible claim under the FCA. See Universal Health Servs., Inc., 2010 WL 4323082, at *4 (dismissing for inability to satisfy Rules 8 and 9(b) based on allegations that there is overlap between the activities and affairs of different entities); Kneepkins, 115 F. Supp. 2d at 40 (concluding that alleging ownership is "plainly not enough" to show a plausible veil-piercing claim).

As to the Government's invitation to delay ruling on Defendants' motion so that the Government may obtain the benefit of discovery to find support for its theory, the Court declines. Although additional facts may be unearthed through discovery, the Government "must still allege, if only on information and belief, the facts it asserts would provide the basis" for Defendants' liability. Kneepkins, 115 F. Supp. 2d at 40. As already discussed, the Government's Complaint fails to allege even that. Therefore, all claims against Beverly Companies and Golden Gate Companies are **DISMISSED** without prejudice.

AO 72A
(Rev. 8/82)

B. <u>Rule 12(b)(6) Motion to Dismiss</u>

　　1. Parties' Arguments

Defendants seek to dismiss the Government's claim that Defendants provided unnecessary speech therapy. Specifically, Defendants argue that the speech-therapy claims fail under Rule 12(b)(6) because the Government "misstates the standard for reasonable and necessary speech therapy services, creating, for purposes of this litigation, its own heightened requirement that exists nowhere in statute, regulation or guidance." Dkt. No. 39, at 3. Defendants emphasize the Government's use of the term "benefit significantly" and "improve significantly" when referring to the standard for assessing therapy's reasonableness and necessity. See <u>id.</u> at 11. According to Defendants, by using this language, the Government seeks to retroactively apply a heightened standard to Defendants without due notice. See <u>id.</u> at 14-15. Further, by employing "an incorrect legal standard . . . , [the Government] cannot state a claim that is plausible on its face." <u>Id.</u> at 11.

In response, the Government disputes that it is applying a discredited standard requiring patient "improvement"; rather, it alleges that "with respect to <u>specific, individual</u> Medicare beneficiaries treated by the defendants, the speech therapy provided was not reasonable and necessary, but was instead

performed only to inflate the number of minutes the facility could report and bill to Medicare." Dkt. No. 48, at 5. In other words, there was no requisite "benefit" to patients. Id.

### 2. Legal Standard

When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must construe the plaintiff's complaint in the light most favorable to the plaintiff and accept all well-pleaded facts alleged in the complaint as true. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). Although a complaint need not contain detailed factual allegations, it must contain sufficient factual material "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

Although a plaintiff must allege facts sufficient to show that the case is plausible, "plaintiffs in federal courts are not required to plead legal theories." Hatmaker v. Mem'l Med. Ctr., 619 F.3d 741, 743 (7th Cir. 2010) (Posner, J.); see also

AO 72A
(Rev. 8/82)

_Evans v. McClain of Ga., Inc._, 131 F.3d 957, 964 n.2 (11th Cir. 1997) (per curiam) ("A complaint need not specify in detail the precise theory giving rise to recovery." (quoting _Sams v. United Food & Commercial Workers Int'l Union_, 866 F.2d 1380, 1384 (11th Cir. 1989))). Neither _Twombly_ nor _Iqbal_ changed this principle. _See Hatmaker_, 619 F.3d at 743. Rather, "[a]ll that is required is that the defendant be on notice as to the claim being asserted against [it] and the grounds on which it rests." _Evans_, 131 F.3d at 964 n.2 (quoting _Sams_, 866 F.2d at 1384). Indeed, "courts have upheld a complaint against a Rule 12(b)(6) motion to dismiss even though the plaintiff appeared to rely on an inappropriate theory." _Andrews v. Monroe Cnty. Transit Auth._, No. 12-2793, 2013 WL 1768014, at *1 (3d Cir. 2013). "Well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint." _Jackson v. City of Centreville_, 899 F. Supp. 2d 1209, 1226 (N.D. Ala. 2012) (quoting _Clemons v. Crawford_, 585 F.3d 1119, 1124 (8th Cir. 2009)).

### 3. Application

For a viable claim under the False Claims Act, "a plaintiff must plead three elements: '(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the

knowledge that the claim was false.'" Barys ex rel. United States v. Vitas Healthcare Corp., 298 F. App'x 893, 894 (11th Cir. 2008) (per curiam) (quoting United States ex rel. Walker v. R&F Props. of Lake Cnty., Inc., 433 F.3d 1349, 1355 (11th Cir. 2005)). As to the specific claims for reimbursement at issue, Medicare Part A covers only services that are reasonable and necessary. See 42 U.S.C. § 1395y(a)(1). Medicare reimbursement requires that service providers furnish necessary information to determine the amount due to the providers. See id. § 1395l(e).

The Government has presented facts that plausibly create a claim for relief under the FCA. The Government alleged that the Contractor trained its employees about the importance of medical record documentation and emphasized that its main goal is reimbursement. Dkt. No. 28 ¶¶ 40-42. This training, along with pressure from supervisors, encouraged therapists to complicate their recommended services. Id. ¶¶ 43-45. As a result, the Contractor and Facility billed the Government for unreasonable and unnecessary speech therapy at the Facility, as exemplified by two patients. Id. ¶¶ 46, 50-57, 69-75. Although the Government argues that speech therapy was unnecessary because the patients' conditions did not significantly improve, the Government also avers that the need for any speech therapy was not supported by the patients' medical records. Id. ¶¶ 56-57.

AO 72A
(Rev. 8/82)

Finally, billing for the therapy was done in knowing violation of the FCA. Id. ¶¶ 69-75.

Although parties disagree about the relevance of whether patients' speech "significantly improved" and whether the Government misstated the appropriate legal standard, this issue will be decided at a later stage of the litigation. Indeed, as facts develop, the Court may or may not have to assess whether a patient improved to determine whether therapy was unnecessary or unreasonable. For now, though, the Government's Complaint states a plausible claim for relief against the Facility and Contractor under the FCA based on their speech-therapy services. Therefore, Defendants' Rule 12(b)(6) motion to dismiss is **DENIED**.

## IV. Conclusion

For the aforementioned reasons, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Plaintiffs' claims against Defendants Beverly Enterprises, Inc., Beverly Health and Rehabilitation Services, Inc., Beverly Enterprises Georgia, Inc., Golden Gate National Senior Care Holdings, LLC, and Golden Gate Ancillary, LLC are **DISMISSED** without prejudice. Plaintiffs' claims against Defendants Beverly Health & Rehab Center-Jesup (d/b/a Golden Living Center-Jesup) and Aegis Therapies, Inc. remain pending.

AO 72A
(Rev. 8/82)

**SO ORDERED**, this 29TH day of October, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)