IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

UNITED STATES OF AMERICA,
REID LAWSON, *ex rel.,* and
STATE OF GEORGIA, *ex rel.,*

    Plaintiffs,

v.                                                 CIVIL ACTION NO.: CV210-072

AEGIS THERAPIES, INC., and
BEVERLY HEALTH & REHAB
CENTER - JESUP, d/b/a Golden
Living Center-Jesup,

    Defendants.

## ORDER

Presently before the Court is Defendants' Motion to Exclude the Proposed Testimony of the Government's Purported Experts, Dr. Kenneth M. Nelson, M.D., and Frosini Rubertino. (Doc. 101). Plaintiff filed a Response (Doc. 122), and Defendants filed a Reply (Doc. 132). The Court held a hearing on this Motion on September 9, 2014.

Plaintiff has retained Dr. Kenneth M. Nelson, M.D. ("Dr. Nelson"), and Ms. Frosini Rubertino, R.N. ("Ms. Rubertino"), to provide expert testimony supporting Plaintiff's claim that Defendants' rehabilitation therapy services were not medically necessary. (Doc. 122, pp. 1–2). Defendants move the Court to exclude the testimony of Dr. Nelson and Ms. Rubertino under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), asserting that such testimony fails to meet Daubert's requirements for the

admissibility of expert testimony. (Doc. 101, pp. 1–2, 23). Plaintiff seeks denial of Defendants' Motion on the basis that the proffered testimony satisfies Daubert scrutiny. (Doc. 122, pp. 1, 15).

In Daubert, the U.S. Supreme Court interpreted Federal Rule of Evidence 702 ("Rule 702"), which governs expert testimony, stating that Rule 702 "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert *scientific* evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing Daubert, 509 U.S. at 589 n.7, 597). The U.S. Supreme Court later held that "Daubert's general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (citing FED. R. EVID. 702). Having adopted these decisions, amended Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The Court of Appeals for the Eleventh Circuit has set forth a three-prong inquiry encompassing the requirements of Daubert and its progeny and Rule 702. Under the three-prong inquiry, a court determining the admissibility of expert testimony must consider whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (citations omitted). The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. Daubert, 509 U.S. at 592, n.10. The Court will address Defendants' arguments pertaining to the three Frazier prongs in turn.

A. **Defendants' argument that Dr. Nelson and Ms. Rubertino are not qualified as experts.**

Defendants emphasize that Dr. Nelson, though a neurosurgeon, has no experience in a skilled nursing facility ("SNF") such as that of Defendants, has not practiced any hands-on medicine in nearly four decades, and has no familiarity with basic terminology in the therapy records of a SNF. (Doc. 101, pp. 2, 7–14). Defendants conclude that Dr. Nelson does not understand the information necessary to evaluate patient improvement due to therapy at the SNF and therefore cannot opine as to whether Defendants' therapy services were medically necessary. (Id. at 14).

Plaintiff stresses Dr. Nelson's decades of experience reviewing medical records for health care fraud. (Doc. 122, pp. 2, 7–8). As to the terminology in the SNF therapy records, Plaintiff maintains that Dr. Nelson bases his opinions on the entire medical record, which includes not only records of therapists but also those of nurses and social workers. (Id. at pp. 10, 15).

"[E]xperts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer

3

another path to expert status." Frazier, 387 F.3d at 1260–61. Here, Dr. Nelson's extensive experience as a health care fraud examiner is the type of experience that would enable him to testify competently as to Defendants' claims for Medicare payment in this case.

Dr. Nelson's expertise, however, is not without limits. Given his lack of experience with SNFs, Dr. Nelson is not qualified to testify as to whether, based on the SNF therapy records, patients' medical conditions improved as a result of therapy at the SNF. Plaintiff's counsel, however, represented at the Motions hearing that the inquiry of the experts will be more fundamental: whether, based on the patients' medical conditions and capability to withstand therapy, the type and amount of rehabilitative therapy services were medically necessary. (Doc. 142, p. 31). In other words, the focus will be on the medical conditions of the patients upon arriving at the SNF and receiving therapy, not as a result of the therapy. (See Doc. 122, p. 8; Doc. 142, pp. 30–33). Because Dr. Nelson need not be an expert on SNFs to do so, Dr. Nelson is qualified to testify as to the matters on which Plaintiff has represented it will make inquiry.

Defendants note that Ms. Rubertino is a registered nurse but assert that she is not a licensed rehabilitation therapist, has no experience treating a patient through rehabilitation therapy (Doc. 101, pp. 2, 14–16), and, according to Dr. Nelson, had difficulty understanding the basic terminology in the SNF therapy records (Doc. 132, p. 10 n.7). Plaintiff responds that Ms. Rubertino is qualified due to her experience advising SNFs as to Medicare compliance (Doc. 122, pp. 10–11) and had no problems answering questions based on the SNF terminology (Id. at p. 9).

AO 72A
(Rev. 8/82)

Given her experience as a nurse and as an advisor on Medicare compliance working directly with SNFs, Ms. Rubertino is qualified to give expert opinion both as to Defendants' claims for Medicare coverage and as to patient improvement as a result of therapy at the SNF. While the parties dispute whether Ms. Rubertino initially had difficulty understanding the terminology in the therapy records, such an issue is a matter for cross-examination. Plaintiff has met its burden in showing that Dr. Nelson and Ms. Rubertino satisfy the first <u>Frazier</u> prong, to the extent that Plaintiff does not seek to elicit Dr. Nelson's testimony regarding patient improvement.

**B.  Defendants' argument that the methodology of Dr. Nelson and Ms. Rubertino is not reliable.**

Defendants note that the Centers for Medicare and Medicaid Services have established coverage requirements for SNF inpatient rehabilitation therapy services, which appear in Medicare Part A and mandate that a claim for coverage be based in part on a therapist's expectation of "material (measurable) improvement." (Doc. 101, pp. 2, 4). Defendants contend that Plaintiff's purported experts arbitrarily evaluate the claims here using three incorrect, ambiguous standards—"significant improvement," which applies in Medicare Part B for other types of services, "significant practical improvement," and "remarkable improvement." (<u>Id.</u> at pp. 4, 17–22).

Plaintiff describes Dr. Nelson and Ms. Rubertino's methodology as "the relevant Medicare guidance"—"the same procedures used by Medicare contractors when reviewing SNF therapy claims" (Doc. 122, p. 4)—and further asserts that the experts have clarified that they are not applying Medicare Part B standards (<u>Id.</u> at p. 13). Plaintiff explains that the experts do not employ the "significant" language as a legal standard; thus, any difference between "material" and "significant" as used in the

5

Medicare manual is irrelevant, and the experts can explain at trial the meaning they assign to this language in reaching their medical necessity opinions. (Id. at pp. 13, 15).

Daubert provides a list of "general observations" for courts to consider in determining the reliability of an expert's theory or technique: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." United States v. Brown, 415 F.3d 1257, 1267 (11th Cir. 2005) (citing Daubert, 509 U.S. at 593–94).

The parties here seem to agree that the appropriate methodology is to review Defendants' claims for payment using the Medicare manual. Although Defendants question whether Dr. Nelson and Ms. Rubertino apply the proper standard therein, Medicare Part A, the Court finds persuasive Plaintiff's repeated assertions that the experts are following the relevant Medicare guidance and are not applying the Medicare Part B standard. Dr. Nelson and Ms. Rubertino thus use a reliable methodology in satisfaction of the second prong of Frazier. Should Defendants perceive any discrepancies or ambiguities in the word choice of Dr. Nelson and Ms. Rubertino, such matters are appropriate for inquiry on cross-examination.

C. **Defendants' argument that the testimony of Dr. Nelson and Ms. Rubertino will not assist the trier of fact.**

Relying exclusively on their previous arguments—that Dr. Nelson and Ms. Rubertino are unqualified and apply an incorrect methodology—Defendants conclude that their opinions are useless in assisting the trier of fact to understand the evidence or determine a fact in issue. (Doc. 101, pp. 22–23). Plaintiff contends that the experts will explain certain patients' medical conditions and ability to cooperate with therapy (Doc.

6

142, p. 34), helping the trier of fact to determine the appropriateness of the type and amount of therapy for which Defendants billed (Doc. 122, p. 15). The Court agrees. Having determined that such matters are within the scope of Dr. Nelson's and Ms. Rubertino's expertise, see supra Part A, the Court finds that their opinions will assist the trier of fact in understanding the medical evidence and facts and deciding the issue of medical necessity.

D. **Conclusion**

Based on the foregoing, Defendants' Motion to Exclude the Proposed Testimony of the Government's Purported Experts, Dr. Kenneth M. Nelson, M.D., and Frosini Rubertino, is **GRANTED IN PART** and **DENIED IN PART**. Dr. Nelson may not testify as to patient improvement as a result of physical therapy; however, he may testify regarding the patients' medical conditions and capabilities at the time of receiving therapy. Ms. Rubertino may testify without such limitation.

**SO ORDERED**, this 30th day of September, 2014.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

7

AO 72A
(Rev. 8/82)

142, p. 34), helping the trier of fact to determine the appropriateness of the type and amount of therapy for which Defendants billed (Doc. 122, p. 15). The Court agrees. Having determined that such matters are within the scope of Dr. Nelson's and Ms. Rubertino's expertise, see supra Part A, the Court finds that their opinions will assist the trier of fact in understanding the medical evidence and facts and deciding the issue of medical necessity.

D. **Conclusion**

Based on the foregoing, Defendants' Motion to Exclude the Proposed Testimony of the Government's Purported Experts, Dr. Kenneth M. Nelson, M.D., and Frosini Rubertino, is **GRANTED IN PART** and **DENIED IN PART**. Dr. Nelson may not testify as to patient improvement as a result of physical therapy; however, he may testify regarding the patients' medical conditions and capabilities at the time of receiving therapy. Ms. Rubertino may testify without such limitation.

**SO ORDERED**, this 30th day of September, 2014.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE